[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Shabazz,* Slip Opinion No. 2016-Ohio-1055.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-1055

THE STATE OF OHIO, APPELLANT, *v.* SHABAZZ, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Shabazz,* Slip Opinion No. 2016-Ohio-1055.]

*Appeal dismissed as improvidently accepted.*

(No. 2014-0941—Submitted June 24, 2015—Decided March 17, 2016.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 100021, 2014-Ohio-1828.

_____

{¶ 1} The cause is dismissed, sua sponte, as having been improvidently accepted.

O'CONNOR, C.J., and PFEIFER, LANZINGER, and O'NEILL, JJ., concur.

O'DONNELL, J., dissents with an opinion in which KENNEDY, J., joins.

FRENCH, J., dissents.

_____

**O'DONNELL, J., dissenting.**

{¶ 2} I respectfully dissent from the majority's decision to resolve this case by declaring that it was improvidently accepted. This is a serious case involving the death of an innocent father of two children that presents significant issues regarding the use of circumstantial evidence, the reasonable inferences that may be drawn by a factfinder, and the proper role of an appellate court reviewing such evidence. In my view, two judges of the appellate court abused their discretion by substituting their judgment for that of the jury and by drawing their own inferences from the circumstantial evidence. By reversing based on the sufficiency of the evidence, the appellate court precluded further proceedings on the felonies of which Shabazz had been convicted by a jury.

{¶ 3} The state presented two propositions of law:

An appellate court, when reviewing a challenge to the sufficiency of the evidence, is required to draw all reasonable inferences in favor of the State's case and may not adopt the defense's inferences to reverse a conviction.

An accomplice may be convicted of felony murder where the victim's death was a proximate result of the underlying felony. The accomplice does not need to know that the principal had a firearm that was the actual cause of the victim's death.

**Facts and Procedural History**

{¶ 4} In the early morning hours of February 19, 2012, Derrell Shabazz, Dajhon Walker, and Otis Johnson entered Tavo Martini Loft, a Cleveland bar and lounge. The security cameras at Tavo recorded activity at various areas of the bar's interior but did not record audio. The recording shows that security personnel

2

patted down all three men as they entered the bar and shows that at that time, Shabazz was wearing glasses.

{¶ 5} Ivor Anderson testified that he and Antwon Shannon went to Tavo that evening to meet up with their friend, Eunique Worley. Shortly before 2:00 a.m., Anderson and Shannon were standing on the dance floor talking when Robert Steel, an acquaintance of Shabazz's, spilled champagne on Anderson. Anderson testified that he told Steel at that time, "You're doing too much," meaning Steel should have been more respectful of the people around him and not been dancing with a drink. Anderson then testified that he saw Steel go over and whisper to Johnson and Shabazz, and he watched the men for about ten minutes because he felt they were plotting against him.

{¶ 6} In the minutes following the incident between Anderson and Steel, the security footage shows that as Steel, Johnson, and Shabazz stood in a circle on the dance floor, Walker joined them and hugged Shabazz, and the group formed a tighter circle. The members of the group spoke to each other and to an unidentified fifth man and other bar patrons; they also continued to look over in the direction of Anderson and Shannon on numerous occasions as they spoke. Shabazz removed his glasses and placed them in his pants pocket. The footage then shows that Steel gestured in the direction of Anderson and Shannon on two occasions, prompting Shabazz, Walker, and the fifth man to look that way. At different times, Walker and Steel each held a champagne bottle by the neck; Steel held a bottle for over five minutes without taking a drink and cradled the bottle with his hand wrapped around its base and the body of the bottle running up the inside of his forearm. The men in the group then positioned themselves so that Steel was close to Anderson, Johnson was behind Steel, Shabazz and Walker were a few feet behind Steel, and the fifth man was behind and slightly to the left of Steel.

{¶ 7} Steel then began dancing and suddenly crouched down, stepped sideways, turned in the direction of Anderson, and swung the champagne bottle he

was holding, striking Anderson on the head while Shabazz, Walker, Johnson, and the fifth man watched. The bottle glanced off Anderson and hit Worley on the forehead. Anderson and Steel began fighting and fell to the ground, and an unidentified female jumped on Anderson. The fifth man joined the fight, and Johnson hit him. Shannon moved toward the group of people grappling on the floor and leaned over. At that point, Shabazz and Walker pursued Shannon, and Walker punched him.

{¶ 8} Shabazz walked around the group fighting on the floor. Walker, who was also moving around the group, pursued Shannon and struck him with a champagne bottle. Shannon moved away from Walker, but Shabazz then joined Walker and both men hit at Shannon. Walker, who then was standing to the left of the pillar, made a movement with his right hand toward his waistband, walked through the fight, and disappeared behind the pillar.

{¶ 9} Johnson and Shabazz went out of view of the video toward the near side of the dance floor. Then Shabazz reappeared, walked across the dance floor toward the fight, and struck Anderson. Johnson also reappeared and rejoined the fight, which moved to the left of the pillar. At that point, Shannon was bent over at the waist. The camera recorded a muzzle flash from behind the pillar—the shot from Walker striking Shannon in the back. At the moment the shot was fired, Shabazz was on the dance floor near the front of the pillar and displayed no reaction to the gunshot.

{¶ 10} The video then shows particulate matter falling from the ceiling and the crowd beginning to run. Shabazz turned and walked across the dance floor away from the fight. Walker reappeared, running from behind the pillar onto the dance floor and fumbling with the waistband of his pants. Shabazz moved toward Walker, reached up with his right hand and patted Walker on the chest. Shabazz then reached up with his left hand, placed it on the back of Walker's right shoulder, and slightly pushed Walker forward as both men headed toward the exit.

{¶ 11} Shannon died from the gunshot wound.

{¶ 12} A Cuyahoga County Grand Jury jointly indicted Shabazz, Walker, and Johnson for aggravated murder, felony murder based on the predicate offense of felonious assault, and three counts of felonious assault of Shannon: one alleging knowingly causing serious physical harm, a second, alleging use of a champagne bottle as a deadly weapon, and a third, alleging use of a firearm as a deadly weapon. Each of these counts had accompanying firearm specifications except for the count of felonious assault alleging use of a champagne bottle as a deadly weapon. The indictment also contained one count of felonious assault of Anderson alleging use of a champagne bottle as a deadly weapon and two counts of felonious assault of Worley. The grand jury further indicted Shabazz for having a weapon while under disability.

{¶ 13} Prior to trial, Johnson pleaded guilty to one count of felonious assault, and the trial court placed him on community control.

{¶ 14} Shabazz and Walker proceeded to a joint trial after which the trial court found Shabazz guilty of having a weapon while under disability and a jury found him guilty of the remaining counts except for the two counts of felonious assault of Worley, but the jury found him not guilty of the firearm specifications.[1] The court sentenced him to 20 years to life in prison for aggravated murder to be served concurrently with a term of nine months for having a weapon while under a disability, and merged the other counts involving Shannon into the aggravated murder conviction. The court also sentenced him to two years in prison for the

---

[1] The trial court's sentencing entry is silent regarding the specifications, and the record does not contain the verdict forms. However, the transcript indicates that the jury found Shabazz not guilty of the specifications accompanying the felony murder and felonious assault counts. Regarding the specifications accompanying the aggravated murder count, the transcript indicates that the court read into the record two contradictory sets of verdict forms—one set finding Shabazz guilty and one set finding him not guilty of those specifications. However, it appears the set of forms relaying findings of guilt for those specifications actually relate to Walker, not Shabazz.

felonious assault of Anderson to be served consecutively to the other counts for a total of 22 years to life in prison.

{¶ 15} Shabazz appealed to the Eighth Distinct Court of Appeals, and in a two to one decision, the court concluded the state had presented insufficient evidence to convict Shabazz as an accomplice to the aggravated murder. It vacated that conviction based on a lack of evidence of prior calculation and design, finding that it was "not unusual for a group to stand together and converse while in a nightclub." 2014-Ohio-1828 at ¶ 28. The appellate court also vacated the convictions for felony murder, felonious assault with a firearm, felonious assault by knowingly causing serious physical harm, and having a weapon while under disability on the grounds that insufficient evidence existed to show that Shabazz knew that Walker had a gun. However, it affirmed the two convictions for felonious assault with a champagne bottle but determined they could not be predicate offenses for the felony murder because the grand jury had "expressly indicted [Shabazz] for using a firearm" and, in any event, those crimes were not the proximate cause of Shannon's death because Shannon "continued to help Anderson after being hit, and security footage of Anderson outside of the club after the fight shows he is physically ready to continue fighting." *Id.* at ¶ 36. The court held that its decision to vacate some of Shabazz's convictions rendered his claim of prosecutorial misconduct moot, rendered his challenge to the jury instructions and the manifest weight of the evidence moot, and supported the conclusion that his ineffective assistance of counsel argument lacked merit. The appellate court then remanded the matter to the trial court for resentencing.

### Positions of the Parties

{¶ 16} The state asserts that the evidence is sufficient to support the jury verdict with regard to Shabazz. It contends that the court of appeals fundamentally misconstrued its role in reviewing a sufficiency of the evidence challenge and instead of showing deference to the jury's verdict, failed to consider the entirety of

the state's evidence and erroneously drew all contested inferences in favor of Shabazz. The state also complains that the court of appeals erroneously refused to consider each of the counts of felonious assault in analyzing the felony murder count and added a new requirement to the felony murder statute: the state must prove that Shabazz committed a felony that was the actual cause, not merely the proximate cause, of Shannon's death.

**{¶ 17}** Shabazz maintains that the court of appeals properly vacated his convictions rather than deferring to unreasonable and unsubstantiated inferences advanced by the state. He also contends that the court correctly held that without proof that he knew that Walker possessed a firearm, the state could not prove that his actions met the proximate cause element for felony murder.

### Law and Analysis

**{¶ 18}** This is a case about circumstantial evidence, which is defined as "proof of facts or circumstances by direct evidence from which [the factfinder] may reasonably infer other related or connected facts that naturally and logically follow according to the common experience of people." *Ohio Jury Instructions*, CR Section 409.01(4) (Rev. Aug. 17, 2011). "Circumstantial evidence and direct evidence inherently possess the same probative value," *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus, and it is within the province of the factfinder to draw reasonable inferences from the evidence presented. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.E.2d 560 (1979). Moreover, this court has " 'long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.' " *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 75, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238, 553 N.E.2d 1026 (1990).

**{¶ 19}** In reviewing a claim regarding sufficiency of the evidence, the test is

whether after viewing the probative evidence and inferences reasonably drawn therefrom *in the light most favorable to the prosecution*, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt.

(Emphasis added.) *State v. Filiaggi*, 86 Ohio St.3d 230, 247, 714 N.E.2d 867 (1999).

{¶ 20} The flaw in the appellate court's opinion is that it substituted its judgment for that of the jury. It drew inferences from the evidence that differed from the inferences drawn by the jury from that same evidence. We have previously explained:

Where reasonable minds can reach different conclusions upon conflicting evidence, determination as to what occurred is a question *for the trier of fact. It is not the function of an appellate court to substitute its judgment for that of the factfinder.*

(Emphasis added.) *Jenks* at 279. Thus, the appellate court clearly erred and should have applied the reasonable inferences drawn by the jury from the evidence presented by the state and should have accepted the jury's conclusion that Shabazz acted in concert with Walker.

{¶ 21} Shabazz's culpability is premised on aiding or abetting.

To support a conviction for complicity by aiding or abetting pursuant to R.C. 2923.02(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with,

advised, or incited the principal in the commission of the crime, and
that the defendant shared the criminal intent of the principal.

*State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus.  When an individual acts to aid or abet a principal in the commission of an offense, the individual and principal are equally guilty and the individual is prosecuted and punished as if he were a principal offender.  *See* R.C. 2923.03(F).

{¶ 22} In this case, it was reasonable for the jury to conclude that Shabazz aided and abetted in a scheme designed to implement a calculated decision to kill Anderson, which resulted in Shannon's death, and for the jury to disregard any inference that the conversations between and among Steel, Johnson, Walker, and Shabazz were innocent.  We have explained:

Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified.

*State v. Cotton*, 56 Ohio St.2d 8, 381 N.E.2d 190, paragraph three of the syllabus. Moreover, " '[p]articipation in criminal intent may be inferred from [the defendant's] presence, companionship and conduct before and after the offense is committed.' " *Johnson* at 245, quoting *State v. Pruett,* 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist.1971).

{¶ 23} Here, the inferences drawn by the jury are wholly supported and patently reasonable.  Shabazz and Walker came to Tavo together, and after the spilled drink incident, they had a conversation with Steel and Johnson during which

members of the foursome gestured and repeatedly looked in Anderson's direction. Anderson feared they were plotting against him. Walker and Steel held champagne bottles, and Steel cradled his bottle in a way that suggests he was attempting to conceal it. Shabazz removed his glasses—an action from which the jury could reasonably infer he intended to be part of the attack.

{¶ 24} The evidence shows that before Steel tried to hit Anderson with the champagne bottle, Shabazz, Walker, and Johnson positioned themselves to screen out his act so others would not see and then joined the attack. When Walker shot Shannon, "[h]e was not responding to an immediate threat against his person or instinctively reacting to an event." 2014-Ohio-1828, ¶ 85 (Gallagher, J., dissenting). Instead, he had removed himself from the fight and moved behind a pillar where he could not be seen by the cameras. He fired in the direction of Anderson, who was on the floor to the left of the pillar, but struck Shannon, who was also to the left of the pillar. Shabazz did not react to the gunshot, but rather walked across the dance floor away from the fight, patted Walker on the chest, and placed his left hand on Walker's shoulder as they both moved toward the exit.

{¶ 25} This evidence demonstrates that Shabazz was complicit in the aggravated murder through his actions in planning and participating in an attack in which champagne bottles were used as deadly weapons. As the dissenting judge in the appellate court aptly observed, "The fact that the murder actually involved a handgun, rather than a champagne bottle, does not diminish the criminal intent established by the conduct prior to the shooting." 2014-Ohio-1828, ¶ 83 (Gallagher, J., dissenting). Nonetheless, the jury could have reasonably inferred from Shabazz's lack of reaction to the gun shot and his interaction with Walker after the shooting, while Walker was fumbling with the waistband of his pants, that Shabazz knew that Walker had a firearm.

{¶ 26} His criminal liability is not changed by the fact that Walker killed Shannon instead of Anderson. The doctrine of transferred intent applies and

Shabazz's culpability in Shannon's death is the same as if the attack had resulted in Anderson's death. *State v. Solomon,* 66 Ohio St.2d 214, 421 N.E.2d 139 (1981), paragraph one of the syllabus ("If one purposely causes the death of another and the death is the result of a scheme designed to implement the calculated decision to kill someone other than the victim, the offender is guilty of aggravated murder in violation of R.C. 2903.01(A)").

{¶ 27} Viewing the evidence and drawing reasonable inferences therefrom *in the light most favorable to the prosecution*, any rational trier of fact could have found all the essential elements of aggravated murder, felonious assault with a firearm, felonious assault based on knowingly causing serious physical harm, felony murder predicated on either of those two felonious assaults, and having a weapon while under disability beyond a reasonable doubt.

{¶ 28} Moreover, because the indictment did not specify which felonious assault was the predicate offense for the felony murder count, the jury could also have found Shabazz guilty of felony murder based on either felonious assault count involving the use of a champagne bottle as a deadly weapon if the commission of the offense proximately resulted in Shannon's death. R.C. 2903.02(B). The court of appeals erroneously concluded otherwise, evidently based on the mistaken belief that the firearm specification accompanying the felony murder count was an element of that crime instead of a sentence enhancement. *See State v. Dean*, __ Ohio St.3d __, 2015-Ohio-4347, __ N.E.3d __, ¶ 219 (stating that firearm specifications are sentence enhancements).

{¶ 29} As the dissent in the court of appeals recognized:

> Shabazz knowingly participated in the felonious assault of Anderson
> and Shannon with [champagne] bottles used as deadly weapons.
> Death was a foreseeable consequence of either of those felonious

11

assault charges, and the attacks on both victims culminated in the murder of Shannon.

2014-Ohio-1828, ¶ 74 (Gallagher, J., dissenting). Thus, sufficient evidence also supports the conviction for felony murder to the extent that it was predicated on either conviction for felonious assault with a champagne bottle.

### Conclusion

{¶ 30} In this case, the state presented sufficient evidence to support Shabazz's convictions for aggravated murder and felony murder, felonious assault, and having a weapon while under disability. The two appellate court judges here failed to construe all reasonable inferences from the evidence in a light most favorable to the state and instead improperly substituted their view of the evidence and drew their own inferences from the evidence instead of deferring to those drawn by the jury. This is patently erroneous and results in a gross miscarriage of justice in this instance.

{¶ 31} For these reasons, I dissent from the majority's decision to dismiss this appeal as having been improvidently accepted.

{¶ 32} Instead, I would reverse the judgment of the court of appeals, which vacated the convictions for aggravated murder, felony murder, felonious assault with a firearm, felonious assault by knowingly causing serious physical harm, and having a weapon while under disability, and I would remand the cause to the court of appeals to consider the assignments of error that it found were moot. The dissenting opinion applied the correct legal analysis and in my view properly adjudicated the assignments of error.

K<small>ENNEDY</small>, J., concurs in the foregoing opinion.

_____

Timothy J. McGinty, Cuyahoga County Prosecuting Attorney, and Christopher D. Schroeder and Anna M. Faraglia, Assistant Prosecuting Attorneys, for appellant.

Reuben J. Sheperd, for appellee.

Repper, Pagan, Cook, Ltd., and Christopher J. Pagan, urging affirmance for amicus curiae, Ohio Association of Criminal Defense Attorneys.

_____