[Cite as *State v. George*, 2018-Ohio-4906.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio

       Appellee

v.

Jason George

       Appellant

Court of Appeals No. OT-18-004

Trial Court No. 17 CR 139

**DECISION AND JUDGMENT**

Decided:  December 7, 2018

* * * * *

James J. VanEerten, Ottawa County Prosecuting Attorney, and
Barbara Gallé Rivas, Assistant Prosecuting Attorney, for appellee.

Amanda A. Andrews, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Jason A. George, appeals from the February 2, 2018 judgment of the Ottawa County Court of Common Pleas.  Appellant was indicted on five counts: criminal damaging, R.C. 2909.06(A)(1)(B); theft, R.C. 2913.02(A)(1)(B)(2); theft of drugs, R.C. 2913.02(A)(1)(B)(6); tampering with evidence, R.C. 2921.12(A)(1)(B); and

possession of criminal tools, R.C. 2923.24(A)(C). Following a jury trial, appellant was found guilty of all five counts and was sentenced on February 2, 2018, to a total of 46 months of incarceration. For the reasons which follow, we affirm.

{¶ 2} On appeal, appellant asserts the following assignments of error:

I. APPELLANT'S CONVICTIONS ARE NOT SUPPORTED BY PROOF BEYOND A REASONABLE DOUBT.

II. APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

III. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL WHEN THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION.

{¶ 3} The following evidence was admitted at trial. A detective safety services ranger for the Toledo Area Metroparks testified he was monitoring, pursuant to a search warrant, a GPS tracker on a vehicle registered to appellant on September 11, 2017. The vehicle was described as a 1996 two-door, tan Buick Riviera.

{¶ 4} While the ranger did not know how to calibrate the tracker, he had viewed training videos and followed the instructions of the manufacturer. He also verified the accuracy of the tracker with regard to his own vehicle prior to placing it on appellant's vehicle. In his experience, the ranger knew there could be some glitches because of the satellite system and the blocking of signals by large buildings. He further testified that he has been involved in four different cases utilizing a tracker on a vehicle.

2.

{¶ 5} The ranger tracked appellant's vehicle as it entered the Ottawa National Wildlife Refuge (hereinafter "Refuge") and proceeded to the rear parking lot (by way of the Shop Road). The tracker indicated that appellant's vehicle stopped for a few minutes and then proceeded to exit the park by the same route. The ranger advised the Refuge headquarters he had appellant's vehicle under surveillance. Appellant authenticated a screenshot of the tracker map depicting the area where appellant's vehicle was being tracked. The ranger continued to monitor appellant's vehicle as it left the Refuge, entered the Metzger Marsh area, stopped near a small boat ramp along the dike wall area for a few minutes, left Metzger Marsh, and stopped at Bench's Greenhouse along Route 2.

{¶ 6} The ranger could not determine who was driving appellant's vehicle on this particular day, but the ranger had observed appellant as the sole driver during past surveillances. Furthermore, when the ranger arrived at the location where appellant was apprehended, he observed appellant being taken into custody by wildlife officers at the location indicated on the tracker.

{¶ 7} A U.S. Fish and Wildlife Officer at the Refuge testified he received a message from the ranger on September 11, 2017. He immediately exited the visitor center and joined with another wildlife officer to investigate a vehicle in the trailhead parking lot. Both officers testified that they drove, in a marked unit, along the access road toward the entrance to the Refuge. They observed a vehicle parked or stopped along the road just short of the stop sign at the exit to the park to Route 2. The vehicle was an older, silver-tan Buick Riviera. Both wildlife officers could see one occupant in the

3.

vehicle, but could not describe him. At that time, one of the wildlife officers considered whether that vehicle was the one they were coming to investigate.

{¶ 8} The wildlife officers drove the Shop Road to the trailhead parking lot, which is the only public area along the Shop Road. The wildlife officers observed a blue Honda Civic parked in the parking lot with a shattered passenger side window and glass was on the ground. One wildlife officer remembered two cars were in the lot, the other officer only remembered the victim's car. There are no cameras in the area. After discovering the damage to the vehicle, the wildlife officers immediately turned around and headed back to the Refuge exit to Route 2 and headed in the direction in which the suspected Buick Riviera had been heading.

{¶ 9} When the wildlife officers reached the Ottawa/Lucas County line and had not seen the vehicle, they turned around and drove approximately a half mile back toward the Refuge. The round trip took less than five minutes. Meanwhile the wildlife officer/passenger was in contact with the ranger who continued to monitor appellant's vehicle. The ranger provided additional information which led to the wildlife officers turning around again and heading toward Metzger Marsh.

{¶ 10} Just before reaching the area, the wildlife officers saw the Buick Riviera turn onto westbound Route 2 from the Metzger Marsh area and head toward Oregon, Ohio. The wildlife officers chased appellant's vehicle with the officer's vehicle emergency lights on. The wildlife officers traveled in excess of 80 m.p.h. to catch up to appellant, who was driving at a high rate of speed and passing other vehicles in double

4.

yellow-lined areas. Appellant pulled off the road at Bench's Greenhouse along Route 2. The entire investigation had taken 12-20 minutes since the wildlife officers had first seen the Buick Riviera.

{¶ 11} One wildlife officer checked appellant's license while the other wildlife officer made contact with appellant. Appellant admitted he had been to the Refuge for some encounter with another individual. The other wildlife officer testified he spoke to appellant at a later point during the stop and he denied having been at the Refuge.

{¶ 12} The first wildlife officer to question appellant testified he gave permission for the wildlife officer to search the vehicle. The wildlife officer entered the vehicle to retrieve appellant's identification from the center console where appellant indicated it would be found. In the console, the wildlife officer also found a flat-headed screwdriver, which he believed in his experience could have been used to break a vehicle window, and a prescription medicine bottle labeled as Percocet. The wildlife officer could see there were pills inside, but was not trained to identify them. The wildlife officer asked appellant if the medicine was his and appellant answered affirmatively. The label on the medicine bottle had been partially torn off, which indicated to the officer that appellant was attempting to hide the patient information. However, the officer was able to see the bottom portion of the typed patient name on the label, which he later determined matched the victim's last name.

{¶ 13} The victim testified she met her sister at the Refuge trailhead parking lot at the end of the Shop Road. She recalled their cars were the only cars in the parking lot.

5.

They had been walking in the area for less than ten minutes when she came close to the parking lot and observed a park officer driving away from the lot at a high rate of speed. When she came closer, she saw her car window had been shattered and her purse had been stolen. Her purse contained, among other items, a prescription bottle with 30-35 Percocet pills, which had a complete label from the Kroger pharmacy; a prescription bottle filled with Valium; a bottle of ibuprofen; and a nearly full blue and white box of Camel cigarettes. She further testified that medicine bottle with the torn label depicted in the photograph admitted into evidence was her bottle because it had the Kroger logo and the prescription matched. While the victim's purse was returned to her later that day, she was still missing credit cards, debit cards, her driver's license, Camel cigarettes, and her Percocet bottle. She could not recall if there was any money in the purse. The Percocet bottle and cigarettes were recovered and returned to her shortly after the incident. She believes she threw the medicine bottle away after it was empty.

{¶ 14} An Ottawa County Sheriff sergeant testified he was initially contacted to assist in locating the vehicle to the east of the Refuge and later to handle the theft incident at the Refuge. At the Refuge, he found the car with the shattered passenger window. He was unable to check for fingerprints because the outside of the car was covered in dust. After speaking with the victim, the sergeant proceeded to Bench's Greenhouse where he spoke to the wildlife officers. The sergeant took possession of the prescription medicine bottle and a picture taken by his body camera was admitted into evidence. The photograph is too blurry to make out the partial name of the patient. The sergeant

6.

testified that, at the time of the arrest, he could see enough of the typed letters to make out the last name. He was also able to identify the pills as Percocet through an app on his phone and a pill the victim had in her pocket. The sergeant returned the medicine bottle to the victim after talking with the Ottawa County prosecutor.

{¶ 15} The sergeant arrested appellant and inventoried the car. Painting supplies were found in the trunk as well as a tire iron, which did not appear to the sergeant to have been used to break the car window. The sergeant also confiscated a pack of Camel cigarettes found in the center console, which the victim identified as hers. He did not fingerprint the pill bottle, cigarettes, or screwdriver. The victim's purse was found by an elderly couple. The victim initially said it was found in the Black Swamp Area, but the sergeant later learned it was near Metzger Marsh. Although the victim was also missing her driver's license, Social Security card and credit cards, they were not found in appellant's vehicle. The sergeant also testified from his experience that it is very difficult to break a car window with anything other than a pointed object like a screwdriver.

{¶ 16} A sergeant with the Ottawa County Drug Task Force testified that he obtained on December 15, 2017, a report from the Ohio Prescription Reporting System, which indicated the victim filled a prescription on August 28, 2017, for Oxycodone, Acetaminophen, 100 tablets, at a Kroger pharmacy, with brand name of Percocet. No similar prescription had been filled for appellant within the last 2 years. The report indicates, however, that the information is not warranted as accurate or complete.

7.

{¶ 17} Appellant's first and third assignments of error are interrelated and will be addressed together. In his first assignment of error, appellant argues there was insufficient evidence to support his conviction. In his third assignment of error, appellant argues the trial court erred in denying his motion for acquittal because the state failed to present sufficient evidence to sustain a conviction. Both of these claims raise a due process issue of whether there was sufficient evidence to support the jury verdict as a matter of law. *State v. Scott*, 101 Ohio St.3d 31, 2004-Ohio-10, 800 N.E.2d 1133, ¶ 31, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), and *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). The appellate court reviews the evidence admitted at trial to determine whether, "if believed, [it] would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The same standard is used to review the denial of a motion for acquittal. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 18} The state was required to present evidence to establish the following elements in this case:

8.

1.) Criminal damaging—"knowingly" causing "substantial risk of physical harm to any property of another without the other person's consent." R.C. 2909.06(A)(1).

2.) Theft— "knowingly obtain or exert control over * * * the property" of another "with the purpose of depriving the owner of property" and "[w]ithout the consent of the owner." R.C. 2913.02(A)(1).

3.) Theft of drugs— "knowingly obtain or exert control over * * * the property" of another, "with the purpose of depriving the owner of property" and "[w]ithout the consent of the owner," and the "property stolen is any dangerous drug." R.C. 2913.02(A)(1)(B)(6).

4.) Tampering with evidence— "knowing that an official proceeding or investigation is in progress * * * [a]lter, destroy, or remove any * * * thing, with the purpose to impair its value or availability as evidence." R.C. 2921.12(A)(1).

5.) Possession of criminal tools— "possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." R.C. 2923.24(A).

{¶ 19} Appellant argues the state failed to prove every element of the charged offenses. He did not identify what element(s) lacked sufficient evidence to establish his guilt beyond a reasonable doubt. Appellant has the burden to "include in his brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment

9.

of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary." App.R. 16(A)(7)

{¶ 20} The only specific argument appellant makes within his third assignment of error is that there was no evidence appellant committed the theft offenses. We disagree. Circumstantial evidence was presented that appellant's vehicle was in the area during the ten-minute interval in which the theft occurred. There was also direct evidence that appellant's vehicle was tracked entering the area, stopping for a moment, and then exiting the Refuge. He was also tracked entering Metzger Marsh, stopping for a moment by the boat ramp, and exiting the area. The wildlife officers saw appellant's vehicle exiting both locations. Furthermore, a Percocet prescription bottle and cigarette box which matched the victim's description were found in the console of appellant's vehicle. While the label with the name of the patient was partially defaced, two officers were able to make out the last name of the patient, which matched the victim's name. A screwdriver was also found in the console, which officers testified was the type of instrument capable of breaking a vehicle window. Finally, appellant attempted to elude the wildlife officers after he left Metzger Marsh. We find, based on the totality of the evidence, a jury could reasonably find beyond a reasonable doubt that appellant had committed the theft offense.

{¶ 21} Despite an insufficient argument, we have also considered the evidence presented relating to all of the elements of the other offenses and find sufficient evidence

10.

was presented to submit this case to the jury and that there was sufficient evidence upon which the jury could find that appellant committed each of the offenses beyond a reasonable doubt. Appellant's first and third assignments of error are not well-taken.

{¶ 22} In his second assignment of error, appellant argues that his conviction is contrary to the manifest weight of the evidence. Even when there is sufficient evidence to support the verdict, a court of appeals may decide that the verdict is against the weight of the evidence. *Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, at paragraph two of the syllabus. When weighing the evidence, the court of appeals must consider whether the evidence in a case is conflicting or where reasonable minds might differ as to the inferences to be drawn from it, consider the weight of the evidence, and consider the credibility of the witnesses to determine if "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* at 387, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶ 23} Appellant argues there was no evidence presented which proved beyond a reasonable doubt that appellant committed the crimes alleged. He makes five specific arguments.

{¶ 24} First, appellant argues that while the ranger testified he was monitoring appellant's vehicle with a GPS tracker, the ranger also testified he had not calibrated the tracker, nor did he know how to do so, the ranger did not know if appellant was driving the vehicle, and the ranger never observed appellant commit a crime. We find appellant's argument lacks merit. The ranger testified he did not know how to calibrate the GPS

11.

tracker, but he had verified the tracker was accurate that day by checking it on his own vehicle. Furthermore, the accuracy of the tracker was further established by the fact that the wildlife officers were eventually able to find appellant's vehicle where the ranger's tracking indicated and the tracker reflected appellant's vehicle finally stopped at Bench's Greenhouse. This direct evidence served to establish appellant was in the area at the time of the theft offense, along with his own statement that he had been at the Refuge.

{¶ 25} Second, appellant asserts that the convictions were based on impermissible double inferences because the jury had to infer appellant had committed a prior crime from the fact that the ranger was tracking appellant's vehicle and a second inference from the fact that his car was in the area of the vehicle break-in for a few minutes to support a finding that appellant committed the current break-in. We find this argument lacks merit.

{¶ 26} Circumstantial evidence carries the same weight as direct evidence. *State v. Shabazz*, 146 Ohio St.3d 404, 2016-Ohio-1055, 57 N.E.3d 1119, ¶ 18. Reasonable inferences made from factual evidence are part of the process of evaluating the evidence. *Id.*

{¶ 27} In this case, the reason for the tracker was never discussed. The inference that appellant was the one who committed the theft offense arises solely from the direct evidence that: the tracker and the wildlife officers confirmed appellant was in the area at the time of the offense and no other car was seen in the area; the time frame in which the theft could have occurred was less than ten minutes after the victim parked her car; appellant possessed two items that matched items which had been in the victim's purse;

12.

the prescription bottle, although defaced, still showed the partial name of the patient which matched the victim's name; the missing Percocet and cigarettes were returned to the victim and she did not reject them; the pills matched the victim's description and a pill she had in her pocket; the pharmacy records reported the victim had a prescription for Percocet but appellant did not; appellant possessed a tool which could break a vehicle's window, which was found in the center console with the stolen items rather than in the trunk with appellant's work tools; and appellant fled recklessly at a high rate of speed when the wildlife officers pursued him. We conclude that the jury could reasonably infer from this evidence that appellant committed the theft offense.

{¶ 28} Third, appellant argues that the wildlife officers had no reason to suspect that appellant was involved in the theft until the ranger identified him. We find this argument irrelevant. The wildlife officers worked with the ranger to investigate possible criminal activity. Their reason for initiating the investigation has no bearing on their testimony of the events that transpired.

{¶ 29} Fourth, appellant argues the photograph of the defaced prescription medicine bottle did not show the name of the patient because it was too blurry and the bottle was not introduced into evidence. This argument is not supported by the evidence. While the photograph was blurry and the words on the prescription bottle were not legible, both officers testified they could make out a name from the bottom edge of the typed letters which had not been removed. Furthermore, the prescription was for Percocet, which the victim was missing; the prescription had been filled at a Kroger

13.

pharmacy (the victim's pharmacy); appellant had not filled a prescription for Percocet in the recent two years; the victim believed the bottle which was returned to her was the bottle that had been in her purse.

{¶ 30} Fifth, appellant argues the jury would have to infer that the screwdriver was used as a criminal tool rather than in appellant's painting work. We reject this argument as well because that inference is a permissible inference based on direct evidence. Several officers testified that a screwdriver is the type of tool required to break a vehicle window and the sergeant found nothing in the vicinity of the car which could have shattered the window. Furthermore, the screwdriver was found within appellant's reach and next to items missing from the victim. A reasonable inference can be drawn from this evidence that appellant used the screwdriver to break the car window.

{¶ 31} Sixth, appellant argues the jury would have to infer the window was broken after appellant entered the park. We also reject that this inference was unreasonable. The victim testified she and her sister had been in the park less than ten minutes, no other cars were in the parking lot when the victim arrived, no one was seen leaving the park after appellant, and appellant was tracked as driving to the parking area and remaining there for only a few minutes before leaving. It was reasonable for the jury to infer from this evidence that appellant was the one who committed the theft offense beyond a reasonable doubt.

{¶ 32} Therefore, we reject appellant's arguments that the jury would have to make an inference upon an inference to convict him. We find there was direct and

14.

circumstantial evidence, and reasonable inferences from those facts which supported the convictions. Appellant's second assignment of error is not well-taken.

{¶ 33} Having found that the trial court did not commit error prejudicial to appellant and that substantial justice has been done, the judgment of the Ottawa County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.         _____
                                                        JUDGE

Arlene Singer, J.        

                                  _____
Christine E. Mayle, P.J.                                 JUDGE
CONCUR.

                                  _____
                                                        JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.