[Cite as *State v. Bediako*, 2025-Ohio-3169.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240567 |
|  |  | TRIAL NO. C/24/CRB/7606/B |
| Plaintiff-Appellee, | : | |
| vs. | : | |
|  |  | *JUDGMENT ENTRY* |
| DIANA ASARE BEDIAKO, | : | |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, the briefs, and the arguments.

The judgment of the trial court is reversed and appellant is discharged for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 9/5/2025 per order of the court.**

**By:**_____
            **Administrative Judge**

[Cite as *State v. Bediako*, 2025-Ohio-3169.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-240567 |
| | | TRIAL NO. | C/24/CRB/7606/B |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| DIANA ASARE BEDIAKO, | : | *O P I N I O N* | |
| Defendant-Appellant. | : | | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Reversed and Appellant Discharged

Date of Judgment Entry on Appeal: September 5, 2025

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Cohen, Todd, Kite & Stanford L.L.C., John L. O'Shea* and *Hailey Martin*, for Defendant-Appellant.

**BOCK, Judge.**

{¶1}     In this appeal, defendant-appellant Diana Asare Bediako challenges her conviction for gross neglect of a patient. In two assignments of error, Bediako disputes the sufficiency and weight of the State's evidence proving that CPR[1] or another emergency medical intervention would have prevented harm to her patient, or that her inaction resulted in harm to her patient.

{¶2}     We hold that the State's evidence—the responding officer's bodycam footage and testimony—was insufficient to prove that Bediako's inaction was the actual cause of harm to her patient. The State offered no proof of when or how Bediako's patient died, or any evidence that CPR or other emergency medical intervention would have prevented her patient's death.

{¶3}     We sustain the first assignment of error, reverse Bediako's conviction, and discharge her from further prosecution.

## I.  Factual and Procedural History

{¶4}     After Hamilton County Developmental Disability Services employee Holly Mott urged police to charge Bediako with a crime based on Bediako freezing in response to an unresponsive patient, the State charged Bediako with failing to provide care for a functionally-impaired person in violation of R.C. 2903.16(A) and gross neglect of a patient in violation of R.C. 2903.34(A)(2).

{¶5}     The State's case against Bediako consisted of the responding officer's bodycam footage and testimony from Mott and the responding officer. The underlying facts are not in dispute.

---

[1] No one defined "CPR" at trial, but the context shows that it means cardiopulmonary resuscitation, an emergency lifesaving procedure that may increase the chance for survival for a person whose heart stops beating. *See* American Heart Association, *What is CPR?,* https://cpr.heart.org/en/resources/what-is-cpr (accessed Aug. 27, 2025) [https://perma.cc/P8QR-JAH4].

{¶6} In October 2023, Bediako worked at Graceworks, an "intermediate care facility" in Wyoming, Ohio. Like all Graceworks employees, Bediako was certified to perform first aid and CPR, and she was trained to "take emergency action."

{¶7} D.J. was a 60-year-old resident at Graceworks who required "around-the-clock care." Before he passed, D.J. lived with "cerebral palsy, organic affective disorder, GERD, and depressive disorder." D.J. was also visually impaired and "[p]rimarily nonverbal." Notwithstanding those conditions, a routine checkup with D.J.'s physician revealed that he was "relatively healthy."

{¶8} Bediako and a senior Graceworks colleague were assigned to handle D.J.'s care on the day he died. Specifically, Bediako was tasked with administering his medication and meals. D.J. also needed "full assistance with being changed, being moved," and using the bathroom.

{¶9} Wyoming Police Department Officer Sam Gutknecht testified that he responded to a 911 call made by Graceworks employees for "a male, 60, nonbreather." On his way to Graceworks, Gutknecht learned that CPR was "not in progress." At Graceworks, Gutknecht found D.J. "facedown" on his bed. The State played Gutknecht's bodycam footage, which showed Gutknecht feeling for a pulse and moving D.J. to the floor with Bediako's assistance. Gutknecht testified that D.J. had no pulse, but he did not suspect that D.J. had passed because he "was not cold to the touch." Yet, Gutknecht testified that he is "not medically trained to decipher what would be appropriate" in that situation.

{¶10} The bodycam footage showed D.J. on the floor and Gutknecht shaking D.J.'s shoulder, shouting, "Sir?" Gutknecht started chest compressions until paramedics took over. After 30 minutes of CPR, paramedics pronounced D.J. dead.

{¶11} Police interviewed Bediako[2] on November 16, 2023. Bediako told officers that D.J. would usually lie in the prone position on his bed, and that she was instructed to place a plate of food on his bed for him to eat. She recalled bringing D.J. his dinner as instructed. Bediako returned to D.J.'s room "10 to 15 minutes" later and "thought that he was sleeping at the time and noticed that he had not eaten much of his food." After D.J. did not respond to Bediako, she alerted her senior colleague and the two called an offsite manager. After talking with the offsite manager, they called 911 and then returned to D.J.'s room "but provided no lifesaving measures."

{¶12} Gutknecht testified that a Graceworks report stated that someone had performed CPR on D.J. But, Gutknecht explained, Bediako admitted during her interrogation that she did not perform CPR on D.J., despite her training. Bediako explained that she froze when she saw D.J. because this was her first encounter with an unresponsive person. Gutknecht also recalled that Bediako's senior coworker claimed to have attempted CPR but struggled to turn D.J. onto his back. But Gutknecht later learned that this did not occur.

{¶13} The trial court acquitted Bediako of not providing care for a functionally-impaired person but found her guilty of gross neglect of a patient. The trial court sentenced Bediako to a $750 fine and court costs.

## II. Analysis

{¶14} Bediako appeals and raises two assignments of error. She alleges that her conviction is not supported by sufficient evidence and is against the manifest weight of the evidence.

---

[2] The bodycam footage in the record is stored on a flash drive that includes unadmitted footage of Bediako's interrogation. Even more troubling, the State's flash drive includes bodycam footage from four other unconnected investigations.

## A. *Bediako's appeal is not moot*

**{¶15}** As a threshold matter, the State argued in its brief that this appeal is moot.[3] This appeal is not moot.

**{¶16}** As an appellate court, we lack jurisdiction to entertain moot cases. *State v. Henderson*, 2024-Ohio-2312, ¶ 17 (1st Dist.). For misdemeanor cases, a defendant's completion of her sentence makes her appeal "moot unless the defendant can show that the sentence was served involuntarily or will result in an ongoing collateral disability." *Id.* To decide whether this case is moot, we may consider "extrinsic evidence." *Id.*

**{¶17}** In *Henderson,* this court reviewed caselaw from around Ohio holding "that an appeal of a misdemeanor conviction is not moot even if the defendant has served the sentence when fees, costs, or fines remain unpaid." *Id.* at ¶ 18 (collecting cases). If "'the record does not affirmatively demonstrate' that a defendant has paid the court costs, fines, or fees" imposed by the trial court, courts will presume that those financial obligations are still unpaid and that the appeal is a live controversy. *Id.* at ¶ 19, quoting *State v. Tsibouris,* 2014-Ohio-2612, ¶ 17 (1st Dist.).

**{¶18}** Here, the State does not suggest that Bediako paid her fine or court costs. And the Hamilton County Clerk of Court's website confirms that Bediako still owes court costs and fines, which are "Due Now!" So, Bediako's appeal is not moot.

## B. *Insufficient evidence supported causation*

**{¶19}** In her first assignment of error, Bediako challenges the sufficiency of evidence underlying her conviction for gross neglect of a patient. Specifically, she

---

[3] The State appeared to have abandoned this argument at oral argument.

argues that the evidence does not prove that CPR was necessary or that her panic-induced inaction caused physical harm to D.J.

1. <u>The State must present sufficient causation evidence</u>

**{¶20}** The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires the State to present "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When determining if the evidence is legally sufficient to sustain a conviction, we must decide if, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *See State v. Hinton*, 2025-Ohio-2249, ¶ 8 (1st Dist.); *see also State v. Walker*, 2016-Ohio-8295, ¶ 12.

**{¶21}** The trial court convicted Bediako of gross neglect of a patient under R.C. 2903.34(A)(2). The statute provides, "no person who . . . is an . . . employee of[] a care facility shall . . . commit gross neglect against a resident or patient of the facility." Bediako's inaction constitutes "gross neglect" if the evidence proves that she "knowingly fail[ed] to provide a person with any treatment, care, goods, or services that is necessary to maintain the health or safety of the person when the failure results in physical harm or serious physical harm to the person." R.C. 2903.33(C)(1).

**{¶22}** A failure to provide necessary care to a patient rises to gross negligence under R.C. 2903.33(C)(1) only if that failure "results in" harm to the person. In Ohio, the "'law generally defines "cause" in criminal cases identically to the definition of "proximate cause" in civil cases.'" *State v. Pitts*, 2022-Ohio-4172, ¶ 19 (1st Dist.), quoting *State v. Carpenter,* 2019-Ohio-73, ¶ 51 (3d Dist.). A defendant's failure to act "results in" harm if that failure "was both the actual and legal cause of the result." *Pitts* at ¶ 19. To support a conviction, a defendant's conduct must be "the cause in fact of

the result, meaning that the result would not have occurred 'but for' the conduct." *State v. Lovelace,* 137 Ohio App.3d 206, 216 (1st Dist. 1999). Conduct may be the "actual" cause of a result even if it was not the only cause. *Pitts* at ¶ 19, citing *Carpenter* at ¶ 52.

**{¶23}** The State may establish causation through direct or circumstantial evidence that demonstrates the cause of a person's harm. *State v. Klotz*, 2024-Ohio-2864, ¶ 32 (11th Dist.). Circumstantial evidence is "'proof of facts or circumstances by direct evidence from which [the factfinder] may reasonably infer other related or connected facts that naturally and logically follow according to the common experience of people.'" *State v. Shabazz*, 2016-Ohio-1055, ¶ 18, quoting *Ohio Jury Instructions*, CR § 409.01(4) (Rev. Aug. 17, 2011). With that said, the State must present evidence of circumstances establishing, with some degree of certainty, that the defendant's actions or inaction caused the harm. *Mills v. Best W. Springdale*, 2009-Ohio-2901, ¶ 20 (10th Dist.), quoting *Woodworth v. New York Cent. RR. Co.*, 149 Ohio St. 543, 549 (1949). Speculation and conjecture are inadequate to prove actual causation. *Id.* at ¶ 20.

2. <u>The State's evidence is insufficient to prove causation</u>

**{¶24}** Bediako asserts that the State produced no evidence linking her inaction to D.J.'s death. We agree. The State failed to present any evidence showing D.J.'s official cause of death or whether lifesaving efforts like CPR could have affected D.J.'s chance of survival.

**{¶25}** At oral argument, the State acknowledged that "we don't know" what physical harm resulted from Bediako's inaction. Instead, the State contended that Bediako's inaction "*possibly* could have been a cause of death." And while the State recognized that showing a nexus between Bediako's inaction and D.J.'s death is the

8

"difficult aspect of the case" and would require "medical evidence," it urged us to draw a "common sense" inference—that Bediako's failure to administer lifesaving measures like CPR caused D.J.'s death.

**{¶26}** But even when viewed in a light most favorable to the State, the limited evidence in the record does not prove, beyond a reasonable doubt, that Bediako's failure to administer CPR or other lifesaving efforts could have or would have prevented D.J.'s death. We have no way of knowing whether CPR—or any intervention—would have prevented harm to D.J. The success rate of CPR after a ten-to-15-minute delay is beyond the scope of "common knowledge."[4] Gutknecht correctly suggested at trial that medical training was necessary to "decipher" the proper action in response to D.J.'s condition. And "where an issue involves a question of scientific inquiry that is not within the knowledge of lay witnesses or jurors, expert testimony is required." *Mills* at ¶ 22, quoting *Ramage v. Cent. Ohio Emergency Servs., Inc.*, 64 Ohio St.3d 97, 102 (1992).

**{¶27}** We hold that no rational trier of fact could find that the State proved beyond a reasonable doubt that Bediako's inaction was the actual cause of physical harm to D.J. Therefore, we sustain Bediako's first assignment of error. Because the State's evidence is insufficient to prove causation, an element of the offense, the Double Jeopardy Clause bars any further prosecution of Bediako. *See Henderson*,

---

[4] As one Virginia Court of Appeals recently explained,

> Despite what some may believe, under the best of circumstances CPR is not always effective, even when properly performed. And in some circumstances, CPR may be particularly ineffective. In other words, the EMTs' failure to apply CPR or other therapeutic efforts only destroyed a substantial possibility of [a decedent's] survival if he had a substantial possibility of surviving the underlying condition causing [the] medical distress, in this case, diabetic ketoacidosis. This is a question that falls beyond the realm of the common knowledge and experience of a lay jury, for which the assistance of expert testimony is required.

(Cleaned up.) *Stoots v. Marion Life Saving Crew, Inc.*, 2025 Va. App. LEXIS 118, *14 (Feb. 25, 2025).

2024-Ohio-2312, at ¶ 33 (1st Dist.), citing *Greene v. Massey*, 437 U.S. 19, 24 (1978). Our disposition of the first assignment of error renders Bediako's second assignment of error moot.

### III.  Conclusion

**{¶28}**  We sustain Bediako's first assignment of error, reverse her conviction, and discharge her from further prosecution.

Judgment reversed and appellant discharged.

**KINSLEY, P.J.,** and **MOORE, J.,** concur.