**[Cite as *State v. Burley*, 2020-Ohio-4603.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio

        Appellee

v.

Richard Burley

        Appellant

Court of Appeals No. WD-18-076

Trial Court No. 2017-CR-0345

**DECISION AND JUDGMENT**

Decided: September 25, 2020

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Edward J. Stechschulte, for appellant.

* * * * *

**OSOWIK, J.**

## Introduction

**{¶ 1}** Following a jury trial, the defendant-appellant, Richard Burley, was convicted by the Wood County Court of Common Pleas of one count of engaging in a pattern of corrupt activity (R.C. 2923.32) and 13 counts of forgery (R.C. 2913.31(A)(3)). The trial court sentenced Burley to an aggregate term of ten years, six months in prison.

On appeal, Burley raises twelve assignments of error, among them that the state failed to present legally sufficient evidence that he engaged in a "pattern" of "corrupt activity," as those terms are defined in R.C. 2923.32. As set forth below, we agree that the state's evidence falls short in this case and therefore that his conviction must be vacated. Separately, we also find that Burley's forgery convictions must be vacated for the reason that the trial court lacked subject-matter jurisdiction over those offenses. Accordingly, we vacate Burley's convictions and corresponding sentences in their entirety.

**Background**

{¶ 2} In October or November of 2016, "D.C.," the victim in this case, was reviewing his Huntington Bank statement and noticed a $600 deduction for a purchase at Home Depot. Upon further review of his on-line account and monthly statement, D.C. identified 21 unauthorized purchases at Home Depot, WalMart, Meijer, Sears, and Target. D.C., who is a resident of Perrysburg Township in Wood County, contacted his local bank branch in Lucas County. He also contacted the police.

{¶ 3} Perrysburg Township Police Detective Dustin Glass began an investigation that included reviewing D.C.'s bank statement and then contacting each businesses' "asset protection officer." Detective Glass requested records pertaining to the "transactional history" of each incident of fraud against D.C.'s account and any surveillance videos from the respective stores. Three companies responded to Detective Glass: Meijer, Walmart and Home Depot. All of the affected stores are located in Michigan.

2.

{¶ 4} From Meijer, Detective Glass received a "summary of transactions." The transactions described in that document "tick[ed] and tie[d]," by amount and date, to six fraudulent transactions set forth on D.C.'s Huntington Bank statement. Meijer also provided Detective Glass with "still shots," created from surveillance videos. The still shots show what appears to be the same person, a man, presenting a check to the cashier. The state pursued criminal charges with respect to four of the incidents, i.e., Counts 5, 8, 11, and 12.

{¶ 5} From Walmart, Detective Glass received evidence of five fraudulent purchases. The evidence consisted of electronic "signature slips," which included information regarding the date, time and amount of the purchase. The slips all indicate that the signor was "Michael Colter." Walmart also provided still shots showing a person presenting those checks at the time of check out. Again, the evidence appeared to "tick and tie," by date and amount, to the fraudulent transactions that appeared on D.C.'s bank account. The indictment against Burley includes five counts of forgery relative to the alleged fraudulent purchases at Walmart, i.e., Counts 3, 6, 9, 10, and 14.

{¶ 6} According to the state, Detective Glass also received records from Home Depot in the form of paper records and still shots to support four criminal charges, i.e., Counts 2, 4, 7, and 13. The legal sufficiency of that evidence is at issue in this case and addressed with respect to Burley's supplemental assignment of error.

{¶ 7} When Detective Glass reviewed the still shots provided by the three stores, he was "taken aback" and "immediately recognized" the person as the defendant, Richard

3.

Burley.  Glass had recently conducted an "almost 45 minute[] face-to-face" interview of Burley in a previous forgery case (Wood County Common Pleas case No. 2015-CR-015; hereinafter "the 2015 case").  Records from the 2015 case—which were admitted in this case—indicate that Burley was charged with four counts of forgery, in violation of R.C. 2913.31(A)(3) and (C)(1)(b).  The victims in that case were an Ohio couple, "A.B." and "L.B."  Under a plea agreement, Burley pled guilty to two counts and was sentenced to two years of community control on January 21, 2016.

{¶ 8} On July 20, 2017, Burley was charged with 14 offenses in this case.  In Count 1, Burley was charged with engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1) and (B)(1), a second-degree felony.  Count 1 identified 17 "incidents of corrupt activity," all of them forgery offenses, in violation of R.C. 2913.31(A)(3) and (C)(1)(b).  The first four "incidents" stem from the 2015 case, just described. Additionally, the indictment includes 13 "additional incidents of corrupt activity as set forth in Counts Two through Fourteen of this indictment."  Those forgery counts charge Burley with violating R.C. 2913.31(A)(3) and (C)(1)(b), all fifth-degree felonies.  The offenses relate to the fraud perpetrated against D.C. and are alleged to have occurred between October 23 and November 16, 2016.

{¶ 9} Burley, a resident of Detroit, Michigan, was arrested on January 8, 2018. The record does not indicate where Burley was arrested, other than it was outside of this state and that he waived his right to challenge extradition to Ohio.  The trial was held on

4.

October 1 and 2, 2018, during which the state called four witnesses to testify: D.C., representatives from Meijer and Walmart, and Detective Glass.

{¶ 10} Over the objection of defense counsel, Detective Glass was allowed to testify about his 2015 interview of Burley. According to the detective, Burley admitted that he "was given" nine Huntington Bank account numbers from "an individual in Toledo, a female." With an account number, Burley would "doctor" the last few digits, add a Huntington Bank routing number and then create checks in the name of a fictitious person. Next, Burley would "get expired Michigan IDs and * * * create a fake I.D.," that was in the same name as the check. The name used in the 2015 case was "Anthony Knight." Burley told the detective that he presented the forged checks to buy gift cards and alcohol. Detective Glass testified that gift cards are frequently used in fraud cases because they can be sold at less than face value, for cash.

{¶ 11} At the conclusion of the state's case, Burley moved for an acquittal on "subject matter jurisdiction and venue grounds." Burley argued that the state failed to show that "the offenses occurred in Ohio, let alone Wood County." Alternatively, Burley argued that the state failed to present legally sufficient evidence to support the four forgery counts that were alleged to have occurred at Home Depot. The trial court denied Burley's motion.

{¶ 12} The jury found Burley guilty on all 14 counts, and the trial court moved immediately to sentencing. By judgment entry dated October 9, 2018, the trial court sentenced Burley to a prison term of four years as to Count 1 and six months as to each

5.

count set forth in Counts 2 through 14, all terms to be served consecutively, for an aggregate term of ten and one-half years.  It also sentenced him to three years of postrelease control, pursuant to R.C. 2967.28.

{¶ 13} Burley appealed and raised 11 assignments of error for our review.  In a "supplemental brief," he raised an additional assignment of error.

> **Assignment of Error No. 1**:  Appellant's conviction for engaging in a pattern of corrupt activity was not supported by sufficient evidence to prove beyond a reasonable doubt each and every element of the crime charged.

> **Assignment of Error No. 2**:  The trial court erred in denying Appellant's Rule 29 Motion for Acquittal as there was not sufficient evidence to prove its burden as to venue as to Counts 2 through 14 of the indictment.

> **Assignment of Error No. 3**:  Appellant's conviction for forgery as to Counts 2, 4, 7 and 13 were not supported by sufficient evidence to prove beyond reasonable doubt each and every element of the crime charged.

> **Assignment of Error No. 4**:  The jury's verdict finding Appellant guilty of forgery as to Counts 2, 4, 7 and 13 was against the manifest weight of the evidence.

> **Assignment of Error No. 5**:  Appellant was deprived of his right to a fair trial by the admission of extensive details about Appellant's prior

conviction for the same offense in violation of Evid.R. 403 and Evid.R. 404.

**Assignment of Error No. 6**: The Trial Court abused its discretion in denying Appellant's Motion for Continuance made on the basis of alibi evidence.

**Assignment of Error No. 7:** The Trial Court denied Appellant effective assistance of counsel as guaranteed by the Sixth, and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.

**Assignment of Error No. 8**: The Trial Court abused its discretion by admitting Mr. Burley's prior confession from 2015 when the State did not disclose its intent to use the confession until the day of trial.

**Assignment of Error No. 9**: The Trial Court failed to consider the seriousness and recidivism factors of R.C. § 2929.12 and, therefore, Appellant's sentence is clearly and convincingly contrary to law.

**Assignment of Error No. 10**: The Trial Court erred in sentencing Appellant to consecutive sentences pursuant to R.C. 2929.14(C)(4).

**Assignment of Error No. 11**: Appellant received ineffective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.

**Supplemental Assignment of Error No. 1:** Appellant's conviction for engaging in a pattern of corrupt activity was not supported by sufficient evidence to prove beyond a reasonable doubt that Appellant engaged in a "pattern of corrupt activity."

**The trial court lacked subject-matter jurisdiction over the forgery offenses.**

{¶ 14} We address Burley's assignments of error out of order. In his second assignment of error, he claims that the trial court erred in denying his motion for an acquittal as to the forgery counts set forth in Counts 2 through 14. Burley argues that "the state failed to present sufficient evidence that any of the forgery charges * * * were committed in Wood County."

{¶ 15} Crim.R. 29(A) requires a trial court to order an acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." The standard of review for a decision regarding a Crim.R. 29 motion for acquittal is the same as that for a decision on a sufficiency challenge, i.e.: "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Gonzales*, 6th Dist. Wood No. WD-12-037, 2014-Ohio-545, ¶ 35.

{¶ 16} R.C. 2901.11 grants jurisdiction to Ohio courts over criminal offenses that occur in Ohio. "Jurisdiction" refers to the judicial power to hear and determine a criminal prosecution. *State v. Williams*, 53 Ohio App.3d 1, 4-5, 557 N.E.2d 818 (10th Dist.1988). This is called "territorial jurisdiction" or "subject matter jurisdiction." *Id.*

8.

at 5. The question of subject-matter jurisdiction "is so basic that it can be raised at any stage before the trial court or any appellate court, or even collaterally in subsequent and separate proceedings." *State v. Shrum*, 7 Ohio App.3d 244, 245, 455 N.E.2d 531 (1st Dist.1982).

{¶ 17} "Venue," on the other hand, is governed by R.C. 2901.12. Venue refers to "the appropriate place of trial for a criminal prosecution (or dispute) as between different geographical subdivisions within a state, it being assumed that the court or courts involved have subject matter jurisdiction." *Id.* at 245, fn. 2. In other words, once jurisdiction is established, then venue is determined.

{¶ 18} On appeal, Burley argues that the state failed to present sufficient evidence that any element, of any of the forgery charges, was committed in Ohio. Both parties frame Burley's second assignment of error as one "concerning venue." The state claims that Wood County was the proper venue under R.C. 2901.12 (G), (H), and (I). Thus, it argues that R.C. 2901.12(G) applies because elements of the forgery offenses were committed in "any of two or more jurisdictions," including Wood County; that R.C. 2901.12(H) applies because Burley committed the offenses as part of a continuing "course of criminal conduct"; and/or that R.C. 2901.12(I) applies because the offenses "involve[d] a computer [or] computer network" located in Wood County. The state's reliance on the venue statute is misplaced inasmuch as the venue statute "'*presupposes that the state has jurisdiction to try an offender*, and speaks to the question of where the trial is to take place.'" (Emphasis in the original.) *State v. Yarbrough*, 104 Ohio St.3d 1,

9.

2004-Ohio-6087, 817 N.E.2d 845, ¶ 46, quoting 1974 Committee Comment to H 511.

*See also State v. Cody*, 8th Dist. Cuyahoga No. 100797, 2015-Ohio-2261, ¶ 15

(Remarking that R.C. 2901.12 does not establish territorial jurisdiction and that "[t]he

General Assembly did not include 'course of criminal conduct' in R.C. 2901.11.").

{¶ 19} Therefore, this court must determine whether Ohio had jurisdiction over the

state's prosecution of 13 forgery counts.  "Subject matter jurisdiction is a question of law,

which we review de novo."  (Quotations omitted.)  *Cody* at ¶ 11.

{¶ 20} R.C. 2901.11, entitled "Criminal law jurisdiction," provides, in part,

(A) A person is subject to criminal prosecution and punishment in this state if any of the following occur:

(1) The person commits an offense under the laws of this state, any element of which takes place in this state.

(2) *While in this state*, the person attempts to commit, or is guilty of complicity in the commission of, an offense in another jurisdiction, which offense is an offense under both the laws of this state and the other jurisdiction, or, while in this state, the person conspires to commit an offense in another jurisdiction, which offense is an offense under both the laws of this state and the other jurisdiction, and a substantial overt act in furtherance of the conspiracy is undertaken in this state by the person or another person involved in the conspiracy, subsequent to the person's entrance into the conspiracy.  In any case in which a person attempts to

commit, is guilty of complicity in the commission of, or conspires to commit an offense in another jurisdiction as described in this division, the person is subject to criminal prosecution and punishment in this state for the attempt, complicity, or conspiracy, and for any resulting offense that is committed or completed in the other jurisdiction.

(3) While out of this state, the person conspires or attempts to commit, or is guilty of complicity in the commission of, an offense in this state.

(4) While out of this state, the person omits to perform a legal duty imposed by the laws of this state, which omission affects a legitimate interest of the state in protecting, governing, or regulating any person, property, thing, transaction, or activity in this state.

(5) While out of this state, the person unlawfully takes or retains property and subsequently brings any of the unlawfully taken or retained property *into this state*.

(6) While out of this state, the person unlawfully takes or entices another and subsequently brings the other person *into this state*.

(7) The person, by means of a computer, computer system, computer network, telecommunication, telecommunications device, telecommunications service, or information service, causes or knowingly permits any writing, data, image, or other telecommunication to be

disseminated or transmitted into this state in violation of the law of this state. (Emphasis added.)

{¶ 21} The General Assembly intended to grant Ohio broad jurisdiction. R.C. 2901.11(G) ("This section shall be liberally construed, consistent with the constitutional limitations, to allow this state the broadest possible jurisdiction over offenses and persons committing offenses in, or affecting this state.").

{¶ 22} Applying R.C. 2901.11(A) to the facts of this case, we find that Sections (A)(2), (A)(5) and (A)(6) do not apply because they require the defendant's physical presence "in[] this state." There is no evidence that Burley was ever in Ohio during any point of his forgery crime spree. Likewise, this case does not involve the omission of a legal duty imposed by the state of Ohio, and therefore, Section (A)(4) does not apply. Similarly, because the indictment does not allege that Burley was engaged in a conspiracy as to any of the forgery counts in this case, Section (A)(3) does not apply. *See, e.g., Cody* at ¶ 22-23.

{¶ 23} This leaves only Sections (A)(1) and (A)(7) to establish subject-matter jurisdiction. Again, R.C. 2901.11(A)(1) confers jurisdiction to this state when the defendant commits an offense in violation of Ohio law, "any element of which takes place in this state." *See, e.g., Shrum*, 7 Ohio App.3d at 245, 455 N.E.2d 531. (Trial court in Ohio had subject-matter jurisdiction to try defendant for rape that occurred in Kentucky because an element of the offense, i.e., the employment of force and threat of force began in Ohio where the victim was abducted).

12.

{¶ 24} Counts 2 through 14 allege violations of R.C. 2913.31(A)(3), which provides, in part, that "[n]o person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following: * * * (3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged." A person who violates Section (A)(3) is guilty of forgery. R.C. 2913.31(C)(1)(a). To "utter" is "to issue, publish, transfer, use, put or send into circulation, deliver, or display." R.C. 2913.01(H). The acts of forging and uttering are separate and distinct crimes. *State v. Ferrette*, 18 Ohio St.3d 106, 109, 480 N.E.2d 399 (1985). Thus, one who forges may not necessarily utter and one who utters a forged document need not have created the spurious writing. *State v. McGhee*, 37 Ohio App.3d 54, 57, 523 N.E.2d 864 (8th Dist.1987).

{¶ 25} As to each forgery offense in this case, the indictment alleged that Burley "with purpose to defraud, or knowing that he was facilitating a fraud on [D.C.], did utter, or possess with purpose to utter, a writing, to wit: * * * that Richard Burley knew to have been forged." The 13 forgery counts are distinguished only by their particular facts, i.e., the date of the alleged offense, the check number, and the amount. Burley is alleged to have uttered all 13 forged checks at stores located in Michigan.

{¶ 26} We agree with Burley that "the entirety of [all of] his forgery offenses" were committed in Michigan. "An offense is completed and criminal liability attaches and is irrevocable as soon as the actor satisfies all the elements of an offense." *State v. Capone*, 3d Dist. Crawford No. 3-03-18, 2003-Ohio-5302, ¶ 11. Thus, when Burley "transferr[ed], use[d] * * * delivere[d] or display[ed]" those 13 checks, knowing that they

13.

were forged, Burley committed the offense of forgery under R.C. 2913.31(A)(3). *See Ferrette* at 109 (The "presentation of [an altered lottery] ticket for purposes of receiving cash, knowing that it has been so altered, constitute[s] * * * uttering under R.C. 2913.31(A)(3)."). *See also Capone* at ¶ 11 ("Under R.C. 2913.31(A)(3), [the defendant] completed the crime and criminal liability attached when he possessed [the check], which he knew to be forged, with the intent to utter or transfer that check. An exchange for value is not element of the offense."). Because none of the elements of any of the forgery offenses charged in Counts 2 through 14 "[took] place in this state," R.C. 2901.11(A)(1) does not apply.

{¶ 27} Without citing any particular provision of R.C. 2901.11, the state suggests that this case was properly tried in Ohio because "[D.C.] and his account are in Wood County." But, Burley was not charged with a theft offense. Moreover, theft is not a necessary element of the crime of forgery. Therefore, the fact that the victim and his bank account are located in Ohio is irrelevant as to whether Burley committed the crime of forgery. *See, e.g., State v. Lyons*, 9th Dist. Summit No. 11779, 1985 WL 10599 (Mar. 6, 1985) *(*Affirming dismissal of indictment under R.C. 2901.11(A)(1) where the defendant was charged with one count of receiving stolen property and none of the elements of that offense occurred in Ohio. The fact that stolen property received by the defendant had been obtained through the commission of a theft offense in Ohio is "irrelevant and fails to vest jurisdiction in Ohio courts.").

14.

{¶ 28} Finally, R.C. 2901.1(A)(7) confers jurisdiction in Ohio if the defendant "by means of a computer * * * causes * * * any writing, data [or] image * * * to be * * * transmitted into [Ohio]" in violation of Ohio law. As discussed above, Burley's crimes were completed when he presented the forged checks for payment, which he accomplished in person, at various Michigan stores, and not through use of a computer. The fact that the checks were then fed into a check reader and approved, and money was subsequently transferred out of D.C.'s Ohio account has no bearing on the crime of forgery. Accordingly, because no element of Burley's forgeries, identified in Counts 2 through 14, involved the use of a computer, Section (A)(7) does not apply either.

{¶ 29} For all of the above reasons, Burley's second assignment of error is found well-taken. Pursuant to R.C. 2901.11, we find that the state of Ohio lacked subject-matter jurisdiction over Counts 2 through 14 of the indictment. Therefore, Burley's convictions, as to those counts, and their corresponding sentences, must be and hereby are ordered vacated. *Accord Cody*, 8th Dist. Cuyahoga No. 100797, 2015-Ohio-2261, at ¶ 29 (Vacating conviction for 11 counts of identity fraud where "there was no evidence that [the defendant] used [the] identities or identification information in furtherance of his criminal enterprise in laundering money * * * that affected the state of Ohio.").

**The state failed to establish the existence of a pattern of corrupt activity.**

{¶ 30} Burley presents multiple challenges to his conviction with respect to Count 1, the Ohio RICO Act offense. R.C. 2923.32(A)(1) provides, in part, that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in,

15.

directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity

* * *." Like its federal counterpart, the aim of the Ohio RICO Act is to eradicate

organized crime. *State v. Schlosser*, 79 Ohio St.3d 329, 681 N.E.2d 911 (1998) (Holding

that R.C. 2923.32 is a strict liability offense).

{¶ 31} We begin with Burley's "supplemental assignment of error," in which he

argues that the state failed to present legally sufficient evidence to establish the "pattern

of corrupt activity" element of the offense. This element encompasses not only a pattern

but a corrupt activity. R.C. 2923.31 defines those terms as follows:

> (E) "Pattern of corrupt activity" means *two or more incidents of*
>
> *corrupt activity*, whether or not there has been a prior conviction, that are
>
> related to the affairs of the same enterprise, are not isolated, and are not so
>
> closely related to each other and connected in time and place that they
>
> constitute a single event.
>
> * * *
>
> "Corrupt activity" means engaging in, attempting to engage in,
>
> conspiring to engage in, or soliciting, coercing, or intimidating another
>
> person to engage in any of the following: * * * (2) Conduct constituting any
>
> of the following: * * * (c) Any violation of section * * * 2913.31 * * *
>
> when the proceeds of the violation * * * or the value of the contraband or
>
> other property illegally * * * purchased in the violation exceeds one
>
> thousand dollars or *any combination of violations* described in division

16.

(I)(2)(c) of this section when the total proceeds of the combination of violations * * * or value of the * * * property illegally * * * purchased in the combination of violations exceeds one thousand dollars. (Emphasis added.)

{¶ 32} In the indictment, the state claimed a total of 17 "incidents" of corrupt activity, all of them forgeries under R.C. 2913.31: four from the 2015 case and an additional 13 incidents "as set forth in Counts Two through Fourteen." At trial, the state presented evidence with respect to only two of the forgeries from 2015 and therefore it presented, at most, evidence of 15 incidents of corrupt activity. (See state's Ex. 10). Without addressing the sufficiency of any particular incident, we identify each incident in the table below:

| Incident No. | Location / Store | Victim | Amount |
|---|---|---|---|
| 1 | JC Penney | A.B. and L.B. | $90.97 |
| 2 | Meijer | A.B. and L.B. | $117.44 |
| 3 | Home Depot | D.C. | $106.63 |
| 4 | Walmart | D.C. | $89.31 |
| 5 | Home Depot | D.C. | $98.75 |
| 6 | Meijer | D.C. | $96.98 |
| 7 | Walmart | D.C. | $155.11 |
| 8 | Home Depot | D.C. | $116.93 |
| 9 | Meijer | D.C. | $83.72 |
| 10 | Walmart | D.C. | $104.63 |
| 11 | Walmart | D.C. | $102.92 |
| 12 | Meijer | D.C. | $65.79 |
| 13 | Meijer | D.C. | $83.72 |
| 14 | Home Depot | D.C. | $630.83 |
| 15 | Walmart | D.C. | $103.16 |
| Total | | | $2,046.89 |

17.

{¶ 33} Burley argues that the state failed to produce evidence of at least two corrupt activities, i.e., "a pattern," where the total value of the illegally purchased property, as to each corrupt activity, exceeds $1,000. In support, Burley relies upon *State v. Liggins*, 6th Dist. Sandusky No. 16CAS32, 2018-Ohio-243. There, the state alleged three incidents of corrupt activity, all of them for drug trafficking, in violation of R.C. 2925.03. The evidence submitted at trial established that the proceeds for the three incidents amounted, in total, to $1,050. *Id.* at ¶ 17. The court found that, because the proceeds "exceeded $1,000," the state established that the defendant "committed a corrupt activity." But, the court also found that a "pattern of corrupt activity" requires the state to produce evidence of two or more corrupt activities, which was not present. It explained,

> The language of R.C. 2923.31 and 2923.32 is plain and clear. A pattern of corrupt activity requires two or more corrupt activities. R.C. 2923.31(E). [Thus], [i]n order for drug trafficking in violation of R.C. 2925.03 to constitute a corrupt activity the total proceeds of a violation of that statute or a combination of violations of that statute must exceed $1000. R.C. 2923.31(I)(2)(c). When those definitions are read in conjunction with each other, in order for the state to establish a pattern of corrupt activity it must produce evidence of at least two corrupt activities where the proceeds of each corrupt activity exceeded $1,000. If the general assembly had intended for the pattern of corrupt activity proceeds to exceed

$1,000, the "exceeds one thousand dollars" element would have been included as part of the definition of "pattern of corrupt activity," rather than as part of the definition of "corrupt activity." The General Assembly's deliberate act of defining "corrupt activity" means, at the minimum, the proceeds of "pattern of corrupt activity" must be at least $2,000.02, since the proceeds of each "corrupt activity" must at least be $1,000.01. *Id.* at ¶ 23.

{¶ 34} In response, the state argues that *Liggins'* interpretation of "pattern of corrupt activity" was "wrong" and asks this court to ignore it.

{¶ 35} First, contrary to the state's argument, *Liggins,* did *not* hold that "each and every transaction * * * must be above * * * $1,000." (Appellee brief at 38). Such a finding would run contrary to the explicit language of R.C. 2923.31(I)(2)(c), which provides that a corrupt activity may include "*any combination* of violations * * * when the *total* * * * *value* of the * * * property illegally * * * purchased in the combination of violations exceeds one thousand dollars." (Emphasis added.) *Id.* Indeed, the court in *Liggins* found sufficient evidence of a single corrupt activity precisely because it aggregated the individual drug transactions. We also disagree with the state's argument that *Liggins* is in "direct conflict" with the Ohio Supreme Court's decision in *State v. Stevens*, 139 Ohio St.3d 247, 2014-Ohio-1932, 11 N.E.3d 252, ¶ 18 ("[I]n order to obtain a conviction for engaging in a pattern of corrupt activity, R.C. 2923.31(I)(2)(c) and 2923.32(A) must be construed so that the stated threshold amount applies to each

19.

individual, and not to the enterprise as a whole."). *Stevens* presented a different issue on appeal than the one presented in *Liggins* and this case. Finally, for the record, we agree with *Liggins* that the language of R.C. 2923.31 and 2923.32 is "plain and clear." Accordingly, we find that, in order for the state to establish that a "pattern of corrupt activity" existed in this case, it must point to evidence in the record of at least two corrupt activities, where the value of each corrupt activity, i.e., the property illegally purchased, exceeds $1,000, for a total value of at least $2,000.02).[1]

{¶ 36} With the above in mind, we turn to the evidence presented in this case. The aggregate value of the property illegally purchased by Burley, i.e., the 15 incidents of forgery set forth in the table, equals $2,046.89. Burley, however, disputes the legal sufficiency of the evidence with respect to the Home Depot forgeries, identified in Counts 2, 4, 7, and 13 (which correspond in the table to Incident Nos. 3, 5, 8, and 14).

{¶ 37} According to D.C.'s bank records, there were six fraudulent purchases made at Home Depot against his account. The state pursued four of them. After two days of trial, when no Home Depot representative appeared to testify, the court

---

[1] In calculating whether the monetary threshold required by R.C. 2923.31(E) and (I)(2)(c) was met, Burley separates the 2015 forgeries from the forgeries set forth in Counts 2 through 14, choosing to aggregate them separately. ("Here the total proceeds from Counts 2 through 14 * * * equals $1,838.48, * * * but the two checks [from the 2015 case] equaled $208.41"). The state offers no guidance on how the incidents should be grouped. We take no position on this, other than to recognize that the statute provides that, in determining whether the threshold is met, we may consider "any combination of violations." Therefore, as in *Liggins*, we are concerned with the bottom line, i.e., whether the value of the illegal purchases is "at least $2,000.02," without regard to when the forgeries occurred. *Id.* at ¶ 23.

disallowed the admission of any Home Depot records purporting to show Burley presenting four checks for purchase that correlated to the fraud set forth on D.C.'s bank statements. Despite promising that it would "voluntarily dismiss [the Home Depot] forgery counts" in the event the witness did not appear, the state chose instead to argue that there was sufficient circumstantial evidence to allow the jury to decide Burley's guilt or innocence as to those counts. The state relied exclusively on the following exchange with Detective Glass:

Q. So you obtained similar information from Home Depot?

A. I did. I obtained transactional history and video surveillance from Home Depot also, sir.

Q. Without getting into the details, were there any surprises to you?

A. No, there was not.

{¶ 38} Proof beyond a reasonable doubt as to each element of an offense is required before a trier of fact may make a finding of guilt. R.C. 2901.05(A). Here, there is no evidence in the record from which a rational factfinder could have found beyond a reasonable doubt that Burley uttered the specific checks identified in the Home Depot counts of the indictment, *e.g.*, check No. 1038 in the amount of $630.83 on or about November 16, 2016, as alleged in Count 13. Accordingly, we find that the Home Depot incidents may not be included for purposes of calculating the "value of property illegally purchased." *Accord State v. Morris*, 143 Ohio App.3d 817, 759 N.E.2d 394 (10th Dist.2001) (Although there was evidence that former employee forged two checks, there

21.

was insufficient evidence that he forged a third check where the employer could not identify the defendant's signature on the back of the check in question and despite the fact "there was no other reasonable explanation for [the check] passing through [the defendant's] personal bank account.").

{¶ 39} When we deduct the value of the Home Depot forgeries, $953.14, from the total value of all the alleged forgeries, $2,046.89, the total is $1,093.75. That amount is sufficient to establish a single incident of corrupt activity but not a second. Because there was no evidence of a second corrupt activity, the state failed to establish a "pattern of corrupt activity." Therefore, Burley's conviction is premised upon legally insufficient evidence and must be vacated. Burley's supplemental assignment of error is found well-taken.

## Conclusion

{¶ 40} In sum, we find Burley's second assignment of error well-taken, in part. To the extent that Burley challenges the trial court's subject-matter jurisdiction over the forgery offenses, set forth in Counts 2 through 14 of the indictment, we agree that the court lacked jurisdiction under R.C. 2901.11, and therefore those convictions and corresponding sentences are hereby vacated.

{¶ 41} We also find Burley's supplemental assignment of error well-taken. Therefore, we vacate his conviction and sentence for the engaging in a pattern of corrupt activity offense, as set forth in Count 1 of the indictment.

22.

{¶ 42} In light of our findings with respect to Burley's second and supplemental assignments of error, assignments of error Nos. 1 and 3 through 11 are moot, and we decline to address them. The state is ordered to pay the cost of this appeal pursuant to App.R. 24.

Judgment vacated.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

Thomas J. Osowik, J. _____

Gene A. Zmuda, P.J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.