[Cite as *State v. Alexander-Keels*, 2024-Ohio-3138.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No.  WD-23-044

        Appellee                                Trial Court No.  2023 CR 0171

v.

Jaedyn Joshua Alexander-Keels              **DECISION AND JUDGMENT**

        Appellant                               Decided:  August 16, 2024

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Chief Assistant Prosecuting Attorney, for appellee.

Michael H. Stahl, for appellant.

* * * * *

**SULEK, P.J.**

{¶ 1} Appellant, Jaedyn J. Alexander-Keels, appeals the August 21, 2023 judgment of the Wood County Court of Common Pleas sentencing him to community control after a bench trial finding him guilty of counterfeiting and possessing criminal tools.  Because the counterfeiting convictions were not supported by sufficient evidence, the judgment is reversed, in part, and Keels' convictions for counterfeiting are vacated.

# I. Facts and Procedural History

{¶ 2} On April 6, 2023, the Wood County Grand Jury returned an indictment charging Alexander-Keels with two fourth-degree felony counts of counterfeiting and one fifth-degree felony count of possessing criminal tools. Alexander-Keels pleaded not guilty to the charges.

{¶ 3} At the June 21, 2023 bench trial, Ohio State Highway Patrol ("OSHP") Trooper Devon Black testified that on June 30, 2022, he was on patrol in Wood County, Ohio, when he observed a vehicle traveling 89 m.p.h. in a 65-m.p.h. zone. Black initiated a traffic stop and observed two occupants; Alexander-Keels was the driver. Black testified that the odor of burnt marijuana emanating from the vehicle led to a probable cause search. Alexander-Keels and the passenger informed Black that they were returning to Michigan from Columbus.

{¶ 4} Trooper Black testified he recovered Alexander-Keels' wallet from the center console. Alexander-Keels admitted the wallet was his and that it contained his identification. The wallet held multiple credit cards that were not in Alexander-Keels' name. Black testified that he recovered three cards: one with the name Sylvander Ottos, and two with Jermaine Hayzen. Neither of these individuals were in the vehicle. Trooper Black also recovered Alexander-Keels' cell phone.

{¶ 5} OSHP Sergeant Garrett Lawson testified that on the date of the traffic stop, he was assigned to criminal investigations which includes matters beyond routine road patrol. Lawson assisted in searching Alexander-Keels' vehicle. He stated that based on

2.

multiple years of experience with credit card cases, he enlisted the help of OSHP Trooper Justin Craig who has additional credentialing in credit card fraud cases as well as cell phone data analysis.

{¶ 6} Trooper Craig testified that he is assigned to the OSHP Office of Investigative Services and through that office, he is also assigned to the United States Secret Service Cyber Crime Task Force. Craig stated that he attended criminal investigator's school and the National Criminal Forensic Institute where he received training on extracting evidence from cellular phones. He also testified that he had investigated approximately 500 cases involving credit card fraud over the past five years.

{¶ 7} When Craig arrived on the scene, he interviewed Alexander-Keels, who told him that he collects credit cards that he finds. Craig testified that it is extremely unlikely that someone would find multiple cards from the same issuing bank.

{¶ 8} Alexander-Keels gave Trooper Craig his cell phone passcode and permitted him to search the phone. The "Notes" application had information on how to use a "Fullz" name. Craig explained that the term Fullz means fool or victim. He found Gmail accounts for Sylvander Ottos and Jermanine Hayzen, the names on the recovered credit cards. Craig stated that the phone contained detailed information regarding Ottos and Hayzen including birth dates, employment, Social Security numbers, and cell phone numbers. He confirmed that there were no individuals with the Social Security numbers and that the identities were created to obtain the bank debit cards. The bank was directed to send both debit cards to Alexander-Keels' home address in Pontiac, Michigan.

3.

{¶ 9} Trooper Craig stated that the phone contained evidence that Alexander-Keels was accessing the dark web which allows a user to perform untraceable internet searches and transactions and is frequently used for criminal purposes. Craig stated that Alexander-Keels had accessed websites with information, including step-by-step instructions, on how to fraudulently obtain loans, credit cards numbers, and Social Security numbers. Craig testified that the searches outlined a scheme involving opening a bank account in a fictitious individual's name and applying for a loan. The loan funds would then be transferred to the bank account, loaded on the prepaid card also obtained in the fictitious name, and withdrawn using the card before the fraud was caught by the bank. Craig did not investigate where the phone was physically located during the creation of the false identities. Exhibits documenting the information taken from Alexander-Keels cell phone were admitted into evidence.

{¶ 10} Trooper Craig explained that because the identities of Ottos and Hayzen were fabricated, the bank was the potential fraud victim. Craig clarified that the cards were genuine but the card holders were fictitious. He stated that the cards functioned as pre-loaded debit cards and that they had neither been activated nor loaded with funds. Craig agreed that Alexander-Keels may have never used the cards and that the bank closed both accounts in May 2022, due to inactivity.

{¶ 11} At the close of the State's case, Alexander-Keels moved for a directed verdict under Crim.R. 29. He first argued that Wood County was not the proper venue to try the charges because no element of the crimes, beyond possession of the items, was

4.

furthered in Wood County. He claimed that the purported illegal activity took place at his residence in Pontiac, Michigan. As to the counterfeiting charges, Alexander-Keels argued that the State failed to establish his intent to utter the debit cards in Wood County and as to possessing criminal tools, that there was no evidence presented that Alexander-Keels intended to use his cell phone to commit a felony while in Wood County.

{¶ 12} Alexander-Keels further contended that he could not be convicted under R.C. 2913.30(B)(3), because the stated failed to prove either that he intended to utter the debit cards or that they were an "obligation or other security of the United States" because they were never activated and had no monetary value.

{¶ 13} The State asserted that the possession element satisfied the venue requirement that at least one element of the offenses occurred in Wood County. The State maintained that it was not required to show that Alexander-Keels intended to use the cards in Wood County or that he used his cell phone in Wood County in furtherance of the commission of a felony. As to counterfeiting, the State claimed that it established that Alexander-Keels intended to use the cards by presenting evidence of the steps he had taken to acquire them and the fact that the cards themselves were real satisfied the "security or obligation" element.

{¶ 14} Denying the Crim.R. 29 motion, the trial court found that as to venue, the State was not required to prove that Alexander-Keels had a specific purpose to utter the cards in Wood County. The court concluded that based on the information on Alexander-Keels cell phone regarding funding the debit cards through a fraudulent loan, he intended

5.

to utter them. Finally, the court found sufficient evidence of counterfeiting based on the fictitious names, Social Security numbers, and other information generated and collected by Alexander-Keels.

{¶ 15} The defense then rested and Alexander-Keels renewed his Crim.R. 29 motion. Alexander-Keels argued that as to venue, the State failed to establish a "significant nexus" between Wood County and the crimes at issue. He argued that some "purpose to utter" had to be present in Wood County. The court again denied the motion.

{¶ 16} After deliberation, the trial court found Alexander-Keels guilty on all counts. At the August 21, 2023 sentencing, the court merged the two counterfeiting counts and the State elected to proceed on count No. 1. Alexander-Keels was then sentenced to a three-year community control term subject to various terms and conditions. This appeal followed.

## II. Assignments of Error

I. Insufficient evidence was presented to sustain a conviction on the charged offenses in violation of the U.S. and Ohio Constitutions.

II. Venue was not proper in Wood County for any charge.

## III. Analysis

{¶ 17} In his first assignment of error, Alexander-Keels contends that his convictions for counterfeiting, R.C. 2913.30(B)(3) and (C), and possessing criminal tools, R.C. 2923.24(A) and (C), were supported by insufficient evidence. The State filed a concession of error under 6th Dist.Loc.App.R. 10(H), conceding that Alexander-Keels'

6.

counterfeiting convictions were not supported by sufficient evidence. The State's concession of error is not controlling and this court is tasked with independently reviewing alleged error. *State v. Strange*, 2024-Ohio-2199, ¶ 8 (6th Dist.), citing *State v. Hermes*, 2023-Ohio-2011, ¶ 26 (6th Dist.). "However, if the error is clear from the record, we may accept the concession of error as part of our analysis." *Id.*, citing *Hermes* at ¶ 26.

{¶ 18} Whether there is sufficient evidence to support Alexander-Keels' convictions is a question of law. *State v. Bailey*, 2023-Ohio-657, ¶ 13 (6th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, (1997). In reviewing such a challenge, a court "must consider all evidence admitted at trial, including the improperly admitted evidence * * *." *State v. Gideon*, 2020-Ohio-6961, ¶ 29. "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Smith*, 80 Ohio St.3d 89, 113 (1997), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Accordingly, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Jones*, 2021-Ohio-3311, ¶ 16, quoting *State v. Richardson*, 2016-Ohio-8448, ¶ 13. Rather, the court decides whether, if believed, "the evidence can sustain the verdict as a matter of law." *Richardson* at ¶ 13.

7.

## A. Counterfeiting

{¶ 19} Alexander-Keels' convictions for counterfeiting, R.C. 2913.30 (B)(3), required the State to prove:

> (B) No person, with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following:
>
> …
>
> (3) Possess with the purpose to utter any obligation or other security of the United States, knowing that the obligation or other security has been counterfeited; …

{¶ 20} Alexander-Keels contends, and the State agrees, that the fictitious debit cards were not an "obligation or other security" which is defined under R.C. 2913.30(A)(2) as "an instrument recognized as currency or legal tender or that is issued by the United States treasury, including bills, coins, bonds, or checks" and, thus, could not form the basis of the counterfeiting charges. *See Black's Law Dictionary* (12th Ed. 2024), defining "legal tender" as "[t]he money (bills and coins) approved in a country for the payment of debts, the purchase of goods, and other exchanges for value"; *Black's* further defines "currency" as "[a]n item (such as a coin, government note, or banknote) that circulates as a medium of exchange." Upon review, the bank-issued cards with no monetary value do not meet the definition of United States' issued "currency or legal tender." Thus, as to the portion of Alexander-Keels' first assignment of error challenging

8.

the sufficiency of the evidence supporting his counterfeiting conviction, the assignment is well-taken.

## B. Possessing Criminal Tools

{¶ 21} Alexander-Keels' first assignment of error also challenges his possessing criminal tools' conviction as not being supported by sufficient evidence.[1] His second assignment of error contends that Wood County was not a proper venue to prosecute the charges.

{¶ 22} To convict Alexander-Keels of possessing criminal tools, R.C. 2923.24, the State had to prove the following:

(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.

(B) Each of the following constitutes prima-facie evidence of criminal purpose:

(1) Possession or control of any dangerous ordnance, or the materials or parts for making dangerous ordnance, in the absence of circumstances indicating the dangerous ordnance, materials, or parts are intended for legitimate use;

---

[1]A defendant may be convicted of possessing criminal tools and acquitted of the offense underlying the criminal tools charge. *See State v. Trammer*, 2005-Ohio-3852, ¶ 26-28 (8th Dist.). Further, in prosecuting a possessing criminal tools charge the State need only prove that that defendant's purpose was to violate the law. *State v. Chappell*, 2010-Ohio-5991, ¶ 22.

9.

(2) Possession or control of any substance, device, instrument, or article designed or specially adapted for criminal use;

(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use.

{¶ 23} In addition to the statutory elements, to secure a criminal conviction an action must be commenced in a court with jurisdiction over the subject matter and proper venue. *State v. Burley*, 2020-Ohio-4603, ¶ 16-17 (6th Dist.). Subject matter is the power of the court to hear the matter while venue refers to the appropriate place for a criminal prosecution. *Id.* Venue must be proven beyond a reasonable doubt unless waived by the defendant. *State v. Jackson*, 2014-Ohio-3707, ¶ 143, citing *State v. Headley*, 6 Ohio St.3d 475, 477 (1983). It may be proven either directly or indirectly by all the facts and circumstances of the case. *Id.* at ¶ 144, citing *Headley* at 477.

{¶ 24} The venue statute, R.C. 2901.12, relevantly provides:

(A) The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, . . . in the territory of which the offense *or any element of the offense* was committed.

. . .

(H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses *or any*

*element of one of those offenses* occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:

(1) The offenses involved the same victim, or victims of the same type or from the same group.

(2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.

(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

(4) The offenses were committed in furtherance of the same conspiracy.

(5) The offenses involved the same or a similar modus operandi.

(6) The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination.

(Emphasis added.)

{¶ 25} Alexander-Keels admits that he possessed his cell phone in Wood County and the phone was alleged to have been used in furtherance of the counterfeiting charges. This admission is sufficient to establish venue and the possession element of the charge. *See Headley*, 6 Ohio St.3d at paragraph one of the syllabus; *see also State v. Draggo*, 65 Ohio St.2d 88, 90 (1981); *State v. Warden*, 2004-Ohio-6306, ¶ 26-37 (6th Dist.).

11.

**{¶ 26}** As to his conviction for possessing criminal tools, the analysis turns on whether he intended to use the cell phone criminally. As set forth above, in reviewing the factfinder's determination an appellate court must review all of the evidence presented at trial. Such evidence may be direct or circumstantial. "'Circumstantial evidence has been defined as testimony not grounded on actual personal knowledge or observation of the facts in controversy, but of other facts from which inferences are drawn, showing indirectly the facts sought to be established.'" *State v. Schoewe*, 2023-Ohio-1598, ¶ 21 (6th Dist.), quoting *State v. Payne*, 2014-Ohio-4304, ¶ 22 (11th Dist.); *State v. Nicely*, 39 Ohio St.3d 147, 150 (1988). Circumstantial evidence carries the same weight as direct evidence. *State v. George*, 2018-Ohio-4906, ¶ 26 (6th Dist.), citing *State v. Shabazz*, 2016-Ohio-1055, ¶ 18; *State v. Healey*, 2015-Ohio-4630, ¶ 11 (6th Dist.).

**{¶ 27}** Reviewing the testimony of the OSHP troopers, particularly Trooper Craig, the documents recovered from Alexander-Keels' cell phone and admitted at trial, and the debit cards with fictitious names correlating with the information recovered from the phone and mailed to Alexander-Keels' residence, the trial court could have reasonably found that Alexander-Keels was engaged in criminal activity and used his cell phone to facilitate the activity.

**{¶ 28}** Based on the foregoing, Alexander-Keels' first assignment of error is well-taken, in part, and his second assignment of error is not well-taken.

12.

## IV. Conclusion

{¶ 29} The August 21, 2023 judgment of the Wood County Court of Common Pleas is reversed, in part.  Alexander-Keels' conviction for two counts of counterfeiting is reversed and vacated, his possessing criminal tools conviction is affirmed.  Pursuant to App.R. 24, the State is ordered to pay the costs incurred on appeal.

Judgment affirmed, in part
reversed, in part, and vacated.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                  _____
                                                   JUDGE
Myron C. Duhart, J.            

Charles E. Sulek, P.J.          _____
CONCUR.                                          JUDGE


_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.